UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JIAN ZHONG CHEN, et al.,

                               Plaintiffs,

         -against-

JP STANDARD CONSTRUCTION
CORP., et al.,

                            Defendants.
---------------------------------------------------------------x

                          REPORT AND
                          <u>RECOMMENDATION</u>

                          14-CV-1086 (MKB)

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

     In this wage-and-hour action, plaintiffs Jian Zhong Chen ("Chen") and Ke Xi Duan

("Duan") (collectively, "plaintiffs") seek to recover, *inter alia*, unpaid overtime from their

former employers, defendants JP Standard Construction Corp. ("JP Standard") and Jim Chen

(collectively, "defendants"). <u>See generally</u> Complaint (Feb. 20, 2014) ("Compl."),

Electronic Case Filing Docket Entry ("DE") #1.  Currently pending before this Court, on a

referral from the Honorable Margo K. Brodie, is plaintiffs' motion for default judgment.  <u>See</u>

Motion for Default Judgment (Sept. 10, 2015) ("Pl. Mot."), DE #15; Order Referring Motion

(Oct. 5, 2015) ("10/5/15 Order").

     For the reason set forth herein, the Court recommends that default judgment be

granted against both defendants, jointly and severally, in the amount of $20,197.56,

representing $6,554.96 in compensatory, liquidated, and statutory damages for Duan;

$6,807.60 in compensatory, liquidated, and statutory damages for Chen; and $6,390 in

attorney's fees and $445 in costs.  In addition, the Court recommends awarding prejudgment

interest, as of November 30, 2013, on $1,000 of Duan's recommended damages and $1,200 of

Chen's recommended damages.

## BACKGROUND

As an initial matter, the Court is constrained to note that inconsistences abound among the allegations in the Complaint, statements in Chen's declaration, and evidence procured during the evidentiary hearing.  Nevertheless, the following facts may be gleaned from the record.

## I.      The Complaint's Allegations

Plaintiffs Chen and Duan, both residents of Queens, worked for construction company JP Standard as welding workers.  See Compl. ¶¶ 7-8.  Chen worked at JP Standard from October 7, 2013 through January 29, 2014.  See id. ¶ 7.  Duan was employed around the same time as Chen, from October 14, 2013 until December 28, 2013.  See id. ¶ 8.[1] According to the Complaint, during this time period, plaintiffs worked six days per week, for a weekly total of 66 hours.[2]  See id. ¶ 18.  Plaintiffs' weekly salary for the 66 hours ranged from $660 to $750 per week.  See id.  The pleading further alleges that, although plaintiffs "regularly worked more than forty (40) hours [per week], defendants did not compensate plaintiffs at the overtime rate of one and one-half (1 ½) [their] regular hourly rate for all hours in excess of forty (40) during any work week."  Id. ¶ 19.

Plaintiffs aver that their work for defendants is covered by the Fair Labor Standards

---

[1]  The Complaint erroneously states that Duan worked until December 28, 2014.  See Compl ¶ 8.

[2]  The Complaint is internally inconsistent with respect to the number of hours plaintiffs worked.  Although it states that plaintiffs worked a total of 66 hours per week, it alleges in the same sentence that plaintiffs worked six days per week from 7:30 a.m. to 5:30 p.m., which would result in a weekly total of 60 hours.  See Compl. ¶ 18; see also discussion infra pp. 19-23 (plaintiffs' recollection of their hours as recounted at the inquest hearing).

Act ("FLSA") and the New York Labor Law ("NYLL").  See Compl. ¶¶ 27-48.

Furthermore, plaintiffs claim that defendants violated the FLSA and NYLL "knowingly" and

"willfully."  See id. ¶¶ 31, 37.  At all relevant times, defendant Jim Chen, an owner and

officer of JP Standard, had the authority to hire and fire employees, and exercised authority

regarding JP Standard's pay practices.  See id. ¶ 12.

## II.    Procedural History

### A.    The Initiation of the Case and Defendants' Failure to
###          Respond to the Complaint

On February 20, 2014, plaintiffs filed the instant complaint, but took no further action

in the case for more than three months.  See generally Compl.  Accordingly, Judge Brodie

issued an order directing plaintiffs to take certain steps to proceed with the case or else risk

dismissal for failure to prosecute.  See Electronic Order (July 7, 2014) ("7/7/14 Order").

Finally, on July 10, 2014, plaintiffs filed affidavits of service, indicating that defendants had

been served on June 24, 2014.  See Summons Returned Executed re Chen (July 10, 2014), DE

# 4; Summons Returned Executed re JP Standard (July 10, 2014), DE #5.[3]  When defendants

---

[3]  But see infra p. 36 n.28.  According to the affidavits of service, plaintiffs did not serve their
complaint within 120 days of its filing, as required by the version of Rule 4(m) of the Federal
Rules of Civil Procedure ("FRCP") in effect at the time.  See Fed. R. Civ. P. 4(m) (now
requiring service within 90 days).  Therefore, the Court ordered plaintiffs to show cause why
the case should not be dismissed.  See Order to Show Cause (Feb. 23, 2015) ("2/23/15
OTSC"), DE #9.  In response, plaintiffs' counsel asked that their belated service, which was
only four days after the deadline, be excused for "good cause," due to the fact that the service
processor had made multiple prior attempts to serve defendants and that there would be no
prejudice to defendants if the case were allowed to proceed.  See Response to Order to Show
Cause (Mar. 2, 2015), DE #10.  Although a copy of the Court's Order to Show Cause and the
plaintiffs' response thereto were served on defendants, defendants never filed any submission
with respect to compliance with Rule 4(m).  See 2/23/15 OTSC; Certificate of Service (Mar.
2, 2015), DE #10-1.  The Court need not determine whether plaintiffs established good cause
for violating Rule 4(m) because, even absent good cause, a court may, in its discretion,

(continued...)

failed to timely respond to the Complaint, plaintiffs requested that a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure (the "FRCP") be entered as to each.  See Request for Certificate of Default (July 17, 2015), DE #6.  On July 21, 2014, the Clerk of the Court entered a notation of default.  See Clerk's Entry of Default (July 21, 2014), DE #7.

More than four months later, plaintiffs moved for default judgment, and Judge Brodie subsequently referred the motion to the undersigned magistrate judge.  See Motion for Default Judgment (Dec. 8, 2014), DE #8; Order Referring Motion (Feb. 19, 2015).  Defendants never responded to the motion, despite this Court's direction that they do so.  See Order (Mar. 9, 2015), DE #11.  Thereafter, the Court scheduled an inquest hearing for July 13, 2015 and directed plaintiffs to serve a copy of that scheduling order on defendants.  See Scheduling Order (July 1, 2015), DE #12.

Unfortunately, at the scheduled inquest hearing, the Court learned for the first time that plaintiffs had failed to serve defendants with a copy of the scheduling order.  See Minute Entry (July 13, 2015) ("7/13/15 Minute Entry"), DE #13.  Moreover, the attorney who appeared on behalf of plaintiffs at the hearing had no familiarity with the case.  See id. Finally, although their counsel had notice of the hearing, plaintiffs themselves failed to appear.  See id.  Accordingly, the Court admonished plaintiffs' counsel of record, Jian Hang

---

[3](...continued)
excuse plaintiffs' tardy service.  See Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007).  Given the lack of objection by defendants, as well as plaintiffs' asserted good faith attempts to serve and the absence of prejudice to defendants, the Court is prepared to overlook the tardy nature of plaintiffs' service.

("Hang"), and directed plaintiffs "to consider whether they are serious about pursuing their claims in this case . . . ."  See id. at 2.  At the hearing, plaintiffs agreed to withdraw their motion for default judgment without prejudice, with leave to renew the motion in the future.  See id.

On September 10, 2015, plaintiffs renewed their motion for default judgment, see generally Pl. Mot., and, thereafter, Judge Brodie referred the motion to the undersigned magistrate judge, see 10/5/15 Order.  Subsequently, this Court scheduled an inquest hearing on plaintiffs' renewed motion and served a copy of that scheduling order on defendants.  See Order (Nov. 9, 2015), DE #16.

### B.    The December 16, 2015 Inquest Hearing

Despite being served with notice, defendants did not appear at the scheduled inquest hearing on December 16, 2015.  See Minute Entry (Dec. 16, 2015) ("12/16/15 Minute Entry"), DE #18; Transcript of Evidentiary Hearing (Dec. 16, 2015) ("12/16/15 Tr."), DE #19.  Plaintiff Duan testified in person in support of his claims.[4]  For the most part, Duan's testimony largely mirrored the allegations in the Complaint and the affidavit he executed in support of the default motion.  Compare 12/16/15 Tr. at 8 with Compl. ¶¶ 18-19; see also Declaration of Ke Xi Duan (Nov. 21, 2014) ("Duan Decl.") ¶¶ 4-9, DE #15-5; but see discussion pp. 19-20.

In contrast to Duan, Chen's statements during the hearing diverged from both the allegations in the Complaint and his statements in his declaration in support of default

---

[4]  Both plaintiffs testified via an interpreter.  See 12/16/15 Minute Entry.

judgment.[5]  Compare Declaration of Jian Zhong Chen (Nov. 21, 2014) ("Chen Decl.") ¶ 6,

DE #15-4 (stating that he worked 66 hours per week); Compl. ¶ 18 (same) with 12/16/15 Tr.

at 18 (testifying that he worked an average of 60 hours per week); compare Chen Decl. ¶ 8

(stating that his hourly rate ranged from $10 to $11.36) with 12/16/15 Tr. at 21 (testifying that

his hourly rate ranged from $11 to $12.50); compare Compl. ¶ 18 (alleging that plaintiffs

worked until 5:30 p.m.) with 12/16/15 Tr. at 39 (testifying that, for the first two months, he

typically worked until 5:00 p.m.); compare Compl. ¶¶ 15-19 (no mention of a meal break)

with 12/16/15 Tr. at 22 (testifying that he took about a half-hour meal break each day).

More importantly, during his testimony, Chen revealed that he had a summary of his

working hours (hereinafter, the "Record Summary") that he created based on

contemporaneous notes at the time of his employment with defendants.  See 12/16/15 Tr. at

23, 35-36; Record Summary, DE #18-2.  Contrary to statements in the Complaint and Chen's

declaration, the Record Summary suggested that plaintiff Chen routinely worked fewer than

six days per week.[6]  See, e.g., Record Summary (four days during the week of 11/11/13; five

days during the week of 12/2/13; five days during the week of 12/23/13).

---

[5]  As Chen now resides in Hawaii and travel costs to attend the Brooklyn hearing would have
been substantial, he did not appear, but the Court allowed him to testify by telephone through
the certified interpreter.  See 12/16/15 Tr. at 4-5, 15-16; see also Fed. R. Civ. P. 43(a) ("For
good cause in compelling circumstances and with appropriate safeguards, the court may
permit testimony in open court by contemporaneous transmission from a different location.").
The better practice would have been for plaintiffs' counsel to make the appropriate application
in advance of the hearing, rather than showing up at the hearing without Chen and advising
the Court of his whereabouts.  See 12/16/15 Tr. at 2-5.

[6]  As the Record Summary included text in Chinese, the Court had portions of the document
translated by a certified interpreter.  See 12/16/15 Tr. at 28.

Despite the fact that Chen had provided the Record Summary to his attorney, see 12/16/15 Tr. at 23, plaintiffs' counsel did not present the Record Summary to the Court or otherwise alert the Court to its existence, until Chen volunteered the information at the inquest hearing.  See generally 12/16/15 Tr. at 1-26.  When the Court asked plaintiffs' counsel, Hang, about the Record Summary, Hang proffered a copy of the document that he had brought to the proceeding.  See id. at 27.  The Court pressed Hang on his failure to disclose the Record Summary, as well as his decision to include in the Complaint and motion papers information contrary to that contained in that document.  See id. at 32-33.  In response, Hang insisted that the information in the Complaint came from Chen, but Hang acknowledged that he had not bothered to question his client about the inconsistent information in the Record Summary.  See id. at 34.  After the Court characterized the situation as "very troubling," Hang argued that whatever the Court decided about Chen's situation should have no effect on the damage award to plaintiff Duan, who testified to the best of his recollection and who claimed he had no written time records.  See id. at 42-43.

## DISCUSSION

### I.      Default Judgment Standard

If a defendant fails to respond to the complaint and defaults, any well-pleaded factual allegation contained within the complaint, "other than one relating to the amount of damages," is deemed to be admitted.  Fed. R. Civ. P. 8(b)(6); see Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010) ("A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages.") (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973

F.2d 155, 158 (2d Cir. 1992)).  Nevertheless, a fact is not "'well-pleaded' if it is inconsistent

with other allegations of the complaint[,]" *In re* Indus. Diamonds Antitrust Litig., 119

F.Supp.2d 418, 420 (S.D.N.Y. 2000), or is "contrary to uncontroverted material in the file of

the case," Trans World Airlines v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other

grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973).

Moreover, a pleading's legal conclusions are not assumed to be true; consequently, on

a motion for a default judgment, the factual allegations in the complaint must themselves be

sufficient to establish a right to relief.  See Stein v. Valentine & Kebartas, Inc., No. 10 CV

2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012), adopted, 2012 WL

1416901 (E.D.N.Y. Apr. 24, 2012); see also City of N.Y. v. Mickalis Pawn Shop, LLC, 645

F.3d 114, 137 (2d Cir. 2011) (in assessing a plaintiff's entitlement to default judgment, a

court is "'required to determine whether the [plaintiff's] allegations establish the [defendant's]

liability as a matter of law'") (quoting Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir.

2009)).

Even if liability has been sufficiently alleged, the extent of the damages pleaded by a

plaintiff is not deemed to be established by the default; instead, the Court must conduct "an

inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit

Lyonnais Secs. (USA) Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.

1997)).  This inquiry may be accomplished by evaluating and analyzing affidavits and other

documentary evidence submitted by the plaintiff in regards to the level of damages sought.

See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (finding that a

-8-

"court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum [of damages]").  A court may also, in its discretion, conduct a hearing to ascertain the level of damages to be awarded against a defaulting defendant.  See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).

## II.   Liability

### A.   The Fair Labor Standards Act – Legal Principles

#### 1.  Employer/Employee Relationship

The Fair Labor Standards Act mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  The FLSA defines an employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work").  An employee may bring suit against his employer as long as the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.  Indeed, the regulations promulgated by the United States Department of Labor under the FLSA recognize that there may be joint liability for FLSA violations.  See 29 C.F.R. § 791.2 ("A single individual may stand [as an

employee] to two or more employers at the same time under the Fair Labor Standards Act

. . . ."); <u>see also</u> <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 66 (2d Cir. 2003) (collecting

cases that permit claims against joint employers under the FLSA).  In order to determine

whether an employer-employee relationship exists for FLSA purposes, courts have adopted an

"economic realities" test, "grounded in economic reality rather than technical concepts,

determined by reference not to isolated factors, but rather upon the circumstances of the

whole activity."  <u>Barfield v. N.Y.C. Health & Hosps. Corp.</u>, 537 F.3d 132, 141 (2d Cir.

2008) (citing <u>Goldberg v. Whitaker House Coop., Inc.</u>, 366 U.S. 28, 33 (1961); <u>Rutherford</u>

<u>Food Corp. v. McComb</u>, 331 U.S. 722, 730 (1947)) (internal quotations omitted).

 Although employment relationships under the FLSA are flexible and must be

determined by examining the totality of the circumstances on a case-by-case basis, the Second

Circuit has cited four factors of "formal control" that are pertinent to even the most basic

employer-employee analysis.  <u>See</u> <u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir.

1984).  These "formal control" factors are "whether the alleged employer (1) had the power

to hire and fire the employees, (2) supervised and controlled employee work schedules or

conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records."  <u>Id</u>. (internal quotations and citations omitted).  Even in the absence of

"formal control," an entity or individual may constitute an "employer" if that party had

"functional control" of the employee.  <u>See</u> <u>Glatt v. Fox Searchlight Pictures Inc.</u>, 293 F.R.D.

516, 526 (S.D.N.Y. 2013) (citing <u>Zheng</u>, 355 F.3d at 71-72), <u>vacated and remanded on other</u>

<u>grounds</u>, 811 F.3d 528 (2d Cir. 2016).

 In accordance with these principles, "a corporate officer with operational control of a

-10-

corporation's covered enterprise is an employer along with the corporation . . . ."  Moon v.

Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (internal quotation and citation

omitted).  Consequently, joint employers, including corporate officers with the "power to

control," may be held jointly and severally liable for FLSA violations.  See id. at 236-37

(citations omitted).

### 2.  Violations of the FLSA

In order to establish liability under the FLSA for overtime pay, "a plaintiff must prove

that he performed work for which he was not properly compensated, and that the employer

had actual or constructive knowledge of that work."  Kuebel v. Black & Decker Inc., 643

F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680,

686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008);

Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)).  The FLSA contains a two-

year statute of limitations for non-willful violations, and, for willful violations, a three-year

limitations period from the date that the claim accrued.  See 29 U.S.C. § 255(a).  Willfulness

requires a showing that the employer either knowingly violated its obligations under the FLSA

or showed reckless disregard for whether its conduct was prohibited by that statute.  See

Gunawan  v. Sake Sushi Rest., 897 F.Supp.2d 76, 87 (E.D.N.Y. 2012).  Where, as here, the

complaint alleges willfulness, and the employer has defaulted, the Court is entitled to find that

willfulness has been established.  See id.; Hernandez v. P.K.L. Corp., No. 12-CV-2276

(NG)(RML), 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013).

B.     **New York Labor Law – Legal Principles**

The New York Labor Law is quite similar to the FLSA in that it mandates an overtime

compensation scheme.  See N.Y. Lab. Law § 650 *et seq.*; Gunawan, 897 F.Supp.2d at 84

("The NYLL mirrors the FLSA in most but not all respects.").  Indeed, like the FLSA, for

purposes of the NYLL, an employee may have multiple "employers."  See Glatt, 293 F.R.D.

at 526 ("Courts use the same tests to determine joint employment under both the NYLL and

the FLSA.") (citations omitted).  One area in which the NYLL differs from the FLSA is the

NYLL's requirement that, in circumstances described hereinafter, *see infra* pp. 14-16, an

employer must pay employees a "spread-of-hours" premium that is equal to one hour of pay at

the statutory minimum wage for each day an employee works in excess of ten hours.  N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.4; see also id. §§ 142-2.1 - 2.5 (minimum hourly

wage, overtime rate, and allowances).  Another distinction is the limitations period, which,

under the NYLL, is six years.  See N.Y. Lab. Law §§ 198(3), 663(3).[7]

C.     **Application of the Law to the Facts**

Having set forth the relevant legal standards under the FLSA and the NYLL, the Court

now considers whether the factual allegations asserted in plaintiffs' complaint, deemed to be

true as a result of defendants' default, are sufficient to warrant a finding of liability against

---

[7]  Unlike the FLSA, the NYLL contains a provision that requires employers to pay manual workers on a weekly basis promptly after the wages are earned.  See N.Y. Lab. Law § 191(1)(a) (providing, in pertinent part, that a "manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned"); Shin Won Kang v. Inno Asset Dev., LLC, No. 08-CV-4848 (SLT)(JMA), 2011 WL 1674554, at *3 (E.D.N.Y. Jan. 28, 2011), adopted, 2011 WL 1670946 (E.D.N.Y. May 3, 2011); Chun Jie Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008); see also discussion pp. 16-17 & n.12.

each defendant.  See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.

### 1.    Liability of JP Standard and Jim Chen

Plaintiffs have sufficiently alleged that JP Standard[8] and Jim Chen were their employers for purpose of the FLSA and the NYLL.  See generally Compl. ¶¶ 9-12.  With respect to Jim Chen, the Complaint and testimony are consistent: Jim Chen, as the owner and/or officer of JP Standard, controlled the terms and conditions of plaintiffs' employment. Compare id. ¶ 12 with 12/16/15 Tr. at 10-13 (Jim Chen set the schedule and pay for plaintiff Duan); id. at 20-21 (Jim Chen set the schedule and pay for plaintiff Chen).  This is sufficient to find that JP Standard and Jim Chen were plaintiffs' "employers."  See, e.g., Peralta v. M&O Iron Works, Inc., 12-CV-3179 (ARR), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

### 2.    Overtime

Plaintiffs have sufficiently alleged claims against defendants for unpaid overtime under the FLSA and the NYLL.  The Complaint avers that plaintiffs regularly worked in excess of forty hours each week[9] and that defendants did not pay plaintiffs the requisite premium for those overtime hours.  See Compl. ¶¶ 15-19.

_____

[8]  Plaintiffs bring their FLSA claims pursuant to theories of "individual" and "enterprise" coverage.  See Compl. ¶ 9 (plaintiffs regularly handled products that had been moved in interstate commerce); id. ¶ 11 (JP Standard employees handled, sold or otherwise worked on goods or materials that moved in interstate commerce); id. (JP Standard had "an annual gross volume of sales in excess of $500,000").

[9]  The Complaint alleges that plaintiffs worked either 60 or 66 hours per week.  See supra p. 2 n.2.  While the Record Summary reflects that Chen did not consistently work 60 or 66 hours per week, the Record Summary shows that Chen regularly worked more than 40 hours per week.  See generally Record Summary.

### 3.    Spread of Hours

With respect to spread of hours, plaintiffs have alleged that they "regularly worked six (6) days a week that spanned more than ten hours." Compl. ¶ 21. The Complaint, however, is internally inconsistent as to the hours plaintiffs worked each day. To be sure, plaintiffs allege that they worked six days per week and 66 hours per week, see id. ¶ 18, which implies that plaintiffs typically worked eleven hours per day. But plaintiffs also allege that their hours were from 7:30 to 5:30 p.m., see id., that is, ten hours per day, but not more than ten. See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 (employees are entitled to spread of hours payment where the spread of hours "exceeds" ten hours). In any event, even if the Court were to assume, for purposes of this motion, that plaintiffs regularly worked in excess of ten hours each day, plaintiffs would nevertheless not be entitled to recover spread-of-hours compensation.

The relevant regulation of the New York State Department of Labor ("NYSDOL") provides, in pertinent part, that, "in addition to the minimum wage," if an employee works in excess of 10 hours in a day, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. In accordance with the clear weight of authority in this Circuit, as well as all precedent in this District ruling on the issue, employees who earn in excess of the minimum wage are not entitled to spread-of-hours compensation. See, e.g., Chowdhury v. Hamza Exp. Food Corp., No. 14-CV-150 (JBW), 2015 WL 5541767, at *6 (E.D.N.Y. Aug. 21, 2015), adopted, 2015 WL 5559873 (E.D.N.Y. Sept. 17, 2015) (plaintiff who made significantly higher than the federal and state minimum wage was not entitled to receive spread-of-hours compensation);

-14-

Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629, at *5 (E.D.N.Y. Oct. 2, 2014) (based on the plain language of the spread-of-hours statute, only employees making minimum wage are entitled to spread-of-hours payment); Guadalupe v. Tri-State Emp't Mgmt. & Consulting, Inc., No. 10-CV-3840 (NG) (CLP), 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013) (holding that, in deference to NYSDOL opinion letters, employees making in excess of minimum wage are not entitled to spread-of-hours payments); Ellis v. Common Wealth Worldwide Chauffeured Transp. of N.Y., LLC, No. 10-CV-1741 (DLI) (JO), 2012 WL 1004848, at *7-8 (E.D.N.Y. Mar. 23, 2012); Sosnowy v. A. Perri Farms, Inc., 764 F.Supp.2d 457, 473-74 (E.D.N.Y. 2011); but see Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 339-340 (S.D.N.Y. 2005).

In this matter, plaintiffs have not alleged any minimum wage violations.  See generally Compl.  Indeed, based on the facts alleged in the Complaint, plaintiffs would not be entitled to do so, as they earned more than the federal and New York State minimum wage rate during the relevant time period.  See id. ¶ 18 (alleging that plaintiffs worked 66 hours per week and were paid a salary ranging from $660-to-$750 per week, which would yield an effective hourly rate range from $10 to $11.36).[10]  Therefore, as this Court opts to apply the majority

---

[10]  The New York minimum wage rate was $7.25 per hour through December 30, 2013 (i.e., throughout Duan's employment) and $8.00 from December 31, 2013, through the end of plaintiff Chen's employment.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1.  The federal minimum wage rate throughout the relevant time period was $7.25 per hour.  See 29 U.S.C. § 206.

Plaintiffs allege that they are owed wages, which would effect the calculation of their hourly
(continued…)

view within this Circuit, plaintiff is not entitled to recover spread-of-hours compensation.[11]

### 4.      Failure to Pay

Plaintiffs allege a claim titled "Failure to Pay Wages," see Compl. ¶¶ 13-14, which they purport to bring pursuant to the NYLL, id. ¶¶ 34, 36; see also Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment (Sept. 10, 2015) ("Pl. Mem.") at 10, DE #15-12 (noting that Chen is owed wages under the NYLL).  Pursuant to section 191(a) of the NYLL, manual workers like plaintiffs must "be paid weekly and not later than seven calendar days after the week in which the wages are earned . . . ."  N.Y. Lab. Law § 191(a)(i).[12]

_____

[10](...continued)
rate for minimum wage purposes.  See Compl. ¶¶ 13-14; see also Gordon v. Kaleida Health, 847 F.Supp.2d 479, 490 (W.D.N.Y. 2012) (noting that, for minimum-wage recovery under the FLSA, the pertinent question is whether "the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage").  Nevertheless, as plaintiffs have not made that argument, nor have they alleged any minimum wage violation, that theory will not be considered by the Court.  See Fed. R. Civ. P. 54(c) (default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

[11]  Relying on several NYSDOL opinion letters, some courts have held that the relevant inquiry in determining entitlement to spread-of-hours compensation is not whether the employee has been paid the minimum wage, but whether the employee's "wages are less than the sum of the minimum wages due to the employee *and* an additional hour of minimum wage compensation."  Carrasco-Flores, 2014 WL 4954629, at *5 n.5 (collecting cases) (emphasis added).  Even under this interpretation, however, plaintiffs would not be entitled to receive spread-of-hours compensation. Assuming that plaintiffs worked 72 hours per week (i.e.. six more than 66 hours) and made $660 per week, that would yield an effective hourly rate of $9.16.

[12]  Although plaintiffs generally allege that defendants violated the NYLL by failing to pay owed wages to plaintiffs, they do not specifically cite section 191(a).  See Compl. ¶¶ 33-38. The failure to cite to section 191(a) in particular is not fatal to plaintiffs' claim, as they allege sufficient facts to support such a claim.  See Dong v. Ng, No. 08 Civ. 917 (JGK) (MHD), 2011 WL 2150544, at *5 (S.D.N.Y. Mar. 8, 2011) (holding that plaintiffs' failure to label a claim for underpayment under either section 220 of the NYLL or common law breach of

(continued...)

Here, Duan and Chen allege that, as of the filing of the Complaint, they were owed $1,000 and $1,200, respectively.  See Compl. ¶¶ 13-14.  As plaintiffs filed the Complaint more than seven calendar days after their last week of work, plaintiffs have sufficiently alleged a violation of section 191(a).  See id. ¶¶ 7-8.

### 5.    Wage Theft Prevention Act

During the period of plaintiffs' employment, the NYLL, as amended by the Wage Theft Prevention Act ("WTPA"), 2010 N.Y. Laws ch. 564 § 3, required that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission or other; allowances, if any, claimed as part of the minimum wage, . . . ; the regular pay day. . . ; [and] the name of the employer[.]"  See N.Y. Lab. Law § 195(1)(a), 2010 N.Y. Laws ch. 564 § 3, eff. April 9, 2011 (hereinafter "section 195(1)").[13]  Defendants were also required during that time to "furnish each employee with a statement with every payment of wages" listing information including "the dates of work covered by that payment of wages" and the "rate or rates of pay and basis thereof[.]" N.Y. Lab. Law § 195(3), 2010 N.Y. Laws ch. 564 § 3, eff. April 9, 2011 (hereinafter "section 195(3)").

---

[12](...continued)
contract is not fatal to the success of their case, "since the court must look to the factual allegations of the complaint as defining the nature of the claim rather [than] depend upon the legal labels affixed to those factual allegations") (citing Northrup v. Hoffman of Simsbury, Inc., 134 F.3d 41, 45-46 (2d Cir. 1997), abrogated on other grounds by Swierkiewicz v. Sorema, 534 U.S. 506 (U.S. 2002)), adopted, 2011 WL 2150545 (S.D.N.Y. May 31, 2011).

[13]   The applicable version of section of 195(1) also required employers to provide such notice every February after the initial hiring, but plaintiffs were not employed long enough to trigger any subsequent notice under section 195(1).

Plaintiffs have successfully alleged violations of section 195(1) and section 195(3).  See

Compl. ¶ 25 ("Defendants paid Plaintiffs wages without any accompanying statement" in

accordance with section 195(3)); id. ¶ 26 ("Plaintiffs were never given a notice containing the

rate or rates of pay and basis thereof . . . [or] the name of the employer" or other information

required by section 195(1)).

**III.    Damages**

Although the Court must accept as true the well-pleaded, uncontroverted allegations

contained within plaintiffs' Complaint as to defendants' liability, it need not give the same

deference to plaintiffs' allegations regarding damages.  See supra pp. 7-9.  Instead, the Court

must perform an inquiry to determine the extent of damages to a "reasonable certainty," see

Credit Lyonnais Secs., 183 F.3d at 155, by evaluating and analyzing affidavits and other

documentary evidence submitted by plaintiff, see Fustok, 873 F.2d at 40, as well as plaintiffs'

own testimony.

Under both the FLSA and the NYLL, an employer is required to maintain "records of

the wages, hours, and persons employed by him."  Rodriguez v. Queens Convenience Deli

Corp., No. 09-cv-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)

(citing Wicaksono v. XYZ 48 Corp., No. 10-cv-3635 (LAK) (JCF), 2011 WL 2022644, at *2

(S.D.N.Y. May 2, 2011), adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)).  Where, as

here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may

meet his or her burden of establishing how many hours he or she worked 'by relying solely on

his or her recollection.'"  Rodriguez, 2011 WL 4962397, at *2 (quoting Rivera v. Ndola

Pharm. Corp., 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007) (citing Doo Nam Yang, 427

F.Supp.2d at 335)).

As defendants in this case have defaulted, the Court may rely on plaintiffs' recollection of hours and pay in conducting its inquest. Nevertheless, the Court must ensure that plaintiffs' approximations and estimates are reasonable and appropriate. See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012).

**A.    Plaintiffs' Recollections**

Before proceeding to the damages sought for each claim asserted, the Court must address threshold issues concerning the number of hours plaintiffs worked per week and plaintiffs' respective hourly rates of pay.

**1.    Duan**

**a.    Hours Worked Per Week**

Although the Complaint is internally inconsistent as to whether plaintiffs worked either 66 or 60 hours per week, see Compl. ¶ 18, the declaration filed by Duan in support of default judgment, as well as his testimony at the inquest, confirm that Duan recollects that he worked an average of 66 hours per week. See 12/16/15 Tr. at 8; Duan Decl.[14] Duan additionally testified, however, that he took a break each day for approximately twenty minutes. See 12/16/15 Tr. at 12.[15] Based on Duan's testimony that he worked six days per week, see 12/16/15 Tr. at 8, the Court concludes that Duan's break time totaled two hours per week.

---

[14]   According to Duan, his shift was supposed to end at 5:30 p.m., but Jim Chen would "sometimes" ask him to stay as late as 7:00 p.m. See 12/16/15 Tr. at 11.

[15]   Notably, the Complaint and plaintiffs' motion papers do not acknowledge any such breaks. See generally Compl.; Pl. Mem.

Therefore, the Court will assume for purposes of calculating Duan's damages that he worked 64 hours per week.

### b.    Regular Hourly Rate of Pay

In support of his motion for default judgment, Duan avers that he was "paid $110 to $120 per day, or about $660 to $720 per week," the latter calculations presumably based on Duan's recollection that he worked six days per week.  Duan Decl. ¶ 8.  When defendants first hired Duan, he initially made $110 per day, but, approximately three weeks after he began working, on or about November 4, 2013, defendants raised Duan's salary to $120 per day.  See 12/16/15 Tr. at 12.

For purposes of the FLSA, when an employee is paid a flat sum for a day's work, "his regular rate is determined by totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked."  29 C.F.R. § 778.112; see Charvac v. M & T Project Managers of N.Y., Inc., No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *5-6 (E.D.N.Y. June 17, 2015) (applying 29 C.F.R. § 778.112 to determine the regularly hourly rate of a construction worker who was paid $100 per day), modified in limited part, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16 (requiring a formula similar to 29 C.F.R. § 778.112 for employees who are not paid on an hourly basis).[16]  Thus, the Court calculates Duan's regular hourly rate

---

[16]  The Court concludes that it is appropriate to apply the FLSA regulation governing day rates to Duan, even though Duan testified during the hearing that he was paid once per week.  See 12/16/15 Tr. at 13.  First, throughout this case, Duan characterizes his pay rate as being on a "per day" basis.  See id. at 8, 12-13; see also Duan Decl. ¶ 8.  Second, plaintiffs' counsel has not argued that the FLSA regulation governing employees who receive a weekly

(continued...)

at the time of hiring on October 14, 2013 as $10.31 (i.e., $660 divided by 64) and, as of November 4, 2013, $11.25 (i.e., $720 divided by 64).

### 2.    Chen

#### a.    Hours Worked Per Week

Plaintiff Chen stands in stark contrast to Duan due to the existence of the Record Summary, which reflects precisely how many days Chen worked per week during his employment with defendants.  Thus, while Chen states in his declaration in support of default judgment that he "worked more than ten hours six days per week," Chen Decl. ¶ 7, the Record Summary reveals that Chen often worked five days per week and sometimes as low as three days per week, see Record Summary.

Consequently, unlike the situation with Duan, the Court declines to rely on Chen's recollection of the number of days he worked per week — whether stated in the motion papers or at the inquest hearing — where that recollection contradicts the Record Summary, which Chen created using contemporaneous notes made during his employment.  Plaintiffs' counsel offered no satisfactory reason during the hearing for why Chen's recollection of events that took place almost two years prior was entitled to greater consideration than his own Record Summary.  See 12/16/15 Tr. at 32-34, 40-43.[17]

---

[16](...continued)
salary — 29 C.F.R. § 778.113 — should apply in this instance.  See generally Pl. Mem.; 12/16/15 Tr.  Third, the Court's own independent research revealed no case or regulation to suggest that for the "day rate" regulation to apply, an employee must also be *paid* on a daily basis.  See 29 C.F.R. § 778.112 ("Day rates and job rates").

[17]  Plaintiffs' counsel argues that whatever inconsistencies the Court finds between Chen's testimony and affidavit and the Record Summary should not affect the Court's assessment of Duan's testimony.  See 12/15/16 Tr. at 42-43.  Although there was nothing in Duan's

(continued...)

With respect to the number of hours worked each day, Chen testified that, up until November 24, 2013, when he received his raise, he worked from 7:30 a.m. until 5:00 p.m., or 9.5 hours per day.  See 12/16/15 Tr. at 39.  According to Chen, after November 24, 2013, he worked from 7:30 a.m. until 5:30 p.m., or ten hours per day.  See id.  Chen also testified that on the days when he would work past 5:30 p.m., he would include the extra hours in a "per week" total in the Record Summary.  See 12/16/15 Tr. at 36.  Finally, Chen testified that, throughout his employment, he took one meal break each day that was "within [a] half an hour[.]"  See id. at 22.  Thus, for the period from October 7, 2013 through November 24, 2013, the Court will assume that Chen worked nine hours (9.5 hours minus one half-hour break) for each "day" marked on the Record Summary, unless there are extra hours reflected therein.[18]  For the period from November 25, 2013 through January 29, 2014,  the Court will assume that Chen worked 9.5 hours (ten hours minus one half-hour break), unless there are extra hours indicated therein.

### b.    Regular Hourly Rate of Pay

Chen testified that, at the time he was hired, on October 7, 2013, defendants paid him $110 per day, and that, after November 24, 2013, he received $125 per day.  See 12/15/16 Tr. at 22.

---

[17](...continued)
testimony or demeanor to suggest that he was dissembling, the Court finds it curious that Chen and Duan would have such varying experiences in terms of hours while working at the same job for the same defendant during the same time period.

[18]   As an example, for the week of October 21, 2013 through October 27, 2013, the Record Summary reveals that Chen worked six days, with no extra hours indicated.  See Record Summary.  Therefore, for that week, the Court finds that he worked 54 hours (i.e., nine hours multiplied by six days).  The Court sets forth its specific calculations using the Record Summary information in the section below concerning overtime calculations.  See infra pp. 24-25.

In order to calculate Chen's regularly hourly rate, the Court must divide the amount of pay Chen received at his day rate in one week by the number of hours actually worked.  See 29 C.F.R. § 778.112.  Although the Record Summary shows the number of days worked each week, it does not indicate how much pay Chen received each week, see generally Record Summary, nor did Chen testify at the hearing as to how much pay he received each week.[19]  Thus, the Court is constrained to calculate Chen's regular hourly rate in the following manner: Chen's weekly pay is calculated by taking the number of days worked in a given week, as reflected on the Record Summary, and multiplying that number by the relevant daily rate (i.e., either $110 or $125).  To determine his hourly rate, the Court will then divide the weekly pay by the number of hours actually worked that week, as derived from the Record Summary.[20]

**B.  Overtime Compensation**

**1.  Duan**

For the first three weeks of his employment, Duan's regular hourly rate was $10.31 and his overtime rate was $15.47.  Multiplying the overtime premium ($5.16) by the number

---

[19]  To be sure, Chen's affidavit states, based on his recollection, that he received $660 to $750 per week.  See Chen Decl. ¶ 8.  Those estimates, however, are presumably based on the assumption that Chen worked six days per week — an assumption that is plainly contradicted by the Record Summary.  The Court, therefore, declines to rely on Chen's affidavit for this point.

[20]  As an example, for the week of October 21, 2013 through October 27, 2013, the Record Summary indicates that Chen worked six days.  At a rate of $110 per day, Chen would have received $660 that week.  During this time period, Chen worked nine hours per day, which would yield a weekly total of 54 hours. Therefore, for this week, Chen's regularly hourly rate would be $12.22 ($660 divided by 54).  See infra pp. 24-25.

of hours in excess of forty that Duan worked each week (24) and by the number of weeks at issue (3), the Court concludes that Duan is owed $371.52 for the period October 14, 2013 through November 3, 2013. As of November 4, 2013, Duan's hourly rate of pay increased to $11.25 and his overtime rate of pay became $16.88. Multiplying the adjusted overtime premium ($5.63) by the number of hours in excess of forty that Duan worked each week (24) and by the number of weeks at issue (8), the Court concludes that Duan is owed $1,080.96 for the period November 4, 2013 through December 28, 2013.

Therefore, the Court recommends that Duan be awarded $1,452.48 ($371.52 + $1,080.96) in unpaid overtime premiums under the FLSA.

## 2. Chen

The Court recommends that Chen be awarded $1,003.80 in unpaid overtime premiums under the FLSA, as more fully set forth in the chart below.

| Dates | Daily Rate | Days Worked | Weekly Sums | Hours Worked Each Day | Extra Hours | Regular Hourly Rate | Overtime Rate | Overtime Premium Owed |
|-------|-----------|-------------|-------------|-----------------------|-------------|---------------------|---------------|-----------------------|
| 10/7/13 - 10/13/13 | $110 | 6 | $660 | 9 | N/A | $12.22 | $18.33 | $85.54 |
| 10/14/13 - 10/20/13 | $110 | 6 | $660 | 9 | N/A | $12.22 | $18.33 | $85.54 |
| 10/21/13 - 10/27/13 | $110 | 6 | $660 | 9 | N/A | $12.22 | $18.33 | $85.54 |
| 10/28/13 - 11/3/13 | $110 | 5 | $550 | 9 | N/A | $12.22 | $18.33 | $30.55 |

| 11/4/13 - 11/10/13 | $110 | 5 | $550 | 9 | N/A | $12.22 | $18.33 | $30.55 |
| 11/11/13 - 11/17/13 | $110 | 4 | $440 | 9 | N/A | $12.22 | $18.33 | N/A |
| 11/18/13 - 11/24/13 | $110 | 5 | $550 | 9 | N/A | $12.22 | $18.33 | $30.55 |
| 11/25/13 - 11/30/13 | $125 | 6 | $750 | 9.5 | N/A | $13.16 | $19.74 | $111.86 |
| 12/2/13 - 12/7/13 | $125 | 5 | $625 | 9.5 | N/A | $13.16 | $19.74 | $49.35 |
| 12/9/13 - 12/14/13 | $125 | 6 | $750 | 9.5 | N/A | $13.16 | $19.74 | $111.86 |
| 12/16/13 - 12/21/13 | $125 | 6 | $750 | 9.5 | N/A | $13.16 | $19.74 | $111.86 |
| 12/23/13 - 12/28/13 | $125 | 5 | $625 | 9.5 | N/A | $13.16 | $19.74 | $49.35 |
| 12/30/13 - 1/4/14 | $125 | 5 | $625 | 9.5 | N/A | $13.16 | $19.74 | $49.35 |
| 1/6/14 - 1/11/14 | $125 | 6 | $750 | 9.5 | N/A | $13.16 | $19.74 | $111.86 |
| 1/13/14 - 1/18/14 | $125 | 5 | $625 | 9.5 | 2 | $12.63 | $18.95 | $60.04 |
| 1/20/14 - 1/25/14 | $125 | 3 | $375 | 9.5 | 1 | $12.71 | $19.07 | N/A |
| 1/27/14 - 1/29/14 | $125 | 2.5 | $312.50 | 9.5 | N/A | $13.16 | $19.74 | N/A |
| | | | | | | | **TOTAL OVERTIME DUE:** | **$1,003.80** |

**C.     Unpaid Wages – Section 191(1)**

      **1.     Duan**

Consistent with the pleadings, Duan testified at the inquest hearing that defendants failed to pay him $1,000 of his owed wages.  See 12/16/15 Tr. at 13-14 ("The last pay he paid me there was no money in the account.").  Therefore, this Court recommends that Duan be awarded $1,000 in unpaid wages.[21]

      **2.     Chen**

In the Complaint, plaintiffs allege that Chen was owed $1,200 in unpaid wages.  See Compl. ¶ 13.  Consistent with the pleadings, in support of the default motion, Chen submitted a declaration stating that he was owed $1,200 in unpaid wages.  See Chen Decl. ¶ 9.  At the inquest hearing, however, Chen testified that he was owed approximately $1,375 in unpaid wages, as well as $123.50 that Chen had paid to cover an employee lunch, at defendant Jim Chen's request.  See 12/16/15 Tr. at 18-19.

On this record, the Court recommends awarding Chen the $1,200 in unpaid wages – the same amount pled in the Complaint.  See Compl. ¶ 13; Fed. R. Civ. P. 54(c) (default judgment "must not differ in kind from, or *exceed in amount*, what is demanded in the pleadings") (emphasis added).  Furthermore, because the Complaint makes no mention of unreimbursed lunch costs, the Court declines to recommend any amount based on the lunch

---

[21]  Although the Complaint alleges that Duan was owed $1,000 in unpaid wages, see Compl. ¶ 14, plaintiffs' counsel did not include Duan's unpaid wages in the motion papers.  See Calculation of Duan Damages ("Duan Damages Chart"), DE #15-9 at 4-5; compare Duan Decl. (making no mention of unpaid wages) with Chen Decl. ¶ 9 ("I was not paid my last two paychecks.").

expense.

**D.     Liquidated Damages**

Plaintiffs each seek to recover liquidated damages under both the FLSA and the NYLL.  See Calculation of Chen Damages ("Chen Damages Chart"), DE #15-9 at 2-3; Duan Damages Chart.

**1.     Cumulative Liquidated Damages**

Under the FLSA, an employer who violates the overtime compensation requirements is liable for "an additional equal amount as liquidated damages" unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.  29 U.S.C. §§ 216(b), 260.  Obviously, as a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief.  See Peralta, 2014 WL 988835, at *10.  Therefore, the Court recommends awarding liquidated damages under the FLSA.

The current version of the NYLL also authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."  N.Y. Lab. Law § 663(1).  For the time period set forth in the Complaint, the liquidated damages under the NYLL are calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.  See N.Y. Lab. Law § 663(1).

District courts within this Circuit (and indeed within this District) are divided as to whether employees may obtain cumulative awards of liquidated damages under both the FLSA and the NYLL.  Some decisions issued out of this District have awarded both types of

damages for the same violations, reasoning that, because state case law characterizes the state liquidated damages as a "penalty," whereas federal case law characterizes FLSA liquidated damages as compensatory, the two awards serve different purposes.  See Spain v. Kinder Stuff 2010 LLC, No. 14-CV-2058 (MKB) (MDG), 2015 WL 5772190, at *1, *6-7 (E.D.N.Y. Sept. 29, 2015) (adopting unopposed report and recommendation awarding cumulative liquidated damages); Hernandez v. Punto y Coma Corp., No. 10-CV-3149 (NGG)(RML), 2013 WL 4875074, at *1, *8 (E.D.N.Y. Sept. 11, 2013) (same); see also Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997) ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature.").

Other cases have found that distinction unpersuasive, in light of the similar predicates for an award of liquidated damages under each statute.  See Gortat v. Capala Bros., 949 F.Supp.2d 374, 381 (E.D.N.Y. 2013) (Glasser, J., collecting cases) ("I find the distinction between compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL as semantic, exalting form over substance, and also not persuasive."); see also Bosoro v. Am. Comprehensive Healthcare Med. Grp., P.C., No. 14-CV-1099 (ENV), 2015 WL 5676679, at *7 (E.D.N.Y. Aug. 31, 2015), adopted, 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015); Chowdhury, 2015 WL 5541767, at *7-8; Yun Hong Hua v. Eight Star Inc., No. 15 Civ. 0275(BMC), 2015 WL 2354322, at *4 (E.D.N.Y. May 15, 2015) (declining to award cumulative liquidated damages in a case brought by plaintiffs' counsel, Hang); Peralta, 2014 WL 988835, at *10-11; Guadalupe, 2013 WL 4547242, at *14-15.

As explained in the Peralta Report and Recommendation, see Peralta, 2014 WL 988835, at *11, this Court finds the latter view more persuasive: Both forms of damages seek

to deter wage-and-hour violations in a manner calculated to compensate the party harmed.

See Chun Jie Yin, 2008 WL 906736, at *7.[22]  Having concluded that there is no meaningful

distinction between the two forms of damages, see Peralta, 2014 WL 988835, at *11, the

Court recommends that the District Court award plaintiffs only FLSA liquidated damages on

plaintiffs' overtime damages.

Although the Court declines to recommend liquidated damages under the NYLL to the

extent they overlap with those under the FLSA, plaintiffs are entitled to unpaid back wages,

which cannot be recovered under the FLSA.  Because a claim for unpaid wages does not arise

under the FLSA, there is no potential for a double recovery of liquidated damages for that

claim.

### 2.    Duan

Under the FLSA, Duan is owed unpaid overtime compensation totaling $1,452.48.

Under section 191(a) of the NYLL, Duan is owed $1,000.  See Gonzales v. Gan Israel Pre-

---

[22]  In Griffin v. Astro Moving & Storage Co., the Honorable Margo K. Brodie, the District
Judge assigned to this case, considered the issue of cumulative liquidated damages as part of a
post-trial motion and ultimately reached a different conclusion than the undersigned magistrate
judge.  See No. 11-CV-1844 (MKB), 2015 WL 1476415, at *6 (E.D.N.Y. Mar. 31, 2015).
In doing so, Judge Brodie relied on Second Circuit case law that pre-dated the 2011 NYLL
amendments that, among other things, increased the amount of liquidated damages from 25
percent to 100 percent. Thus, "[t]o the extent that the federal and state statutes now provide
for essentially identical remedies with respect to liquidated damages, it is harder to argue that
they are designed to compensate a plaintiff for disparate harms" under the amended state
statute.  Gunawan, 897 F.Supp.2d at 91 n.11; see Gortat, 949 F.Supp.2d at 381 n.3 (the 2011
amendments to the NYLL "bespeak[] an acknowledgment that the compensatory/punitive
dichotomy is a semantic one").  Nevertheless, in light of Judge Brodie's decision in Griffin,
the Court will provide alternative calculations for liquidated damages, in the event the District
Court declines to adopt this Court's recommendation that cumulative liquidated damages not
be awarded.

School, No. 12-CV-6304 (MKB), 2014 WL 1011070, at *1, *14 (E.D.N.Y. Mar. 14, 2014) (adopting magistrate judge's recommendation that liquidated damages be awarded for violations of section 191 of the NYLL); see also N.Y. Lab. Law § 198.

Therefore, applying 100 percent liquidated damages as required by each statute, the Court recommends awarding Duan a total of $2,452.48 in liquidated damages.[23]

### 3.   Chen

Under the FLSA, Chen is owed unpaid overtime compensation totaling $1,003.80. Under section 191(a) of the NYLL, Duan is owed $1,200.  Therefore, applying 100 percent liquidated damages, the Court recommends awarding Chen a total of $2,203.80 in liquidated damages.[24]

### E.   Statutory Damages Under the WTPA

### 1.   Duan

Pursuant to the version of section 198(1-b) of the NYLL in effect at the time of Duan's hiring, an employee who was not provided with notice in accordance with section 195(1) of the NYLL, see discussion *supra* pp. 17-18, within ten days of his or her first day of employment could recover damages of $50 for every week the violations occurred, up to a statutory maximum of $2,500.  See N.Y. Lab. Law § 198(1-b).  With respect to wage notices

---

[23]  In the alternative, if the District Court opts to award Duan liquidated damages on his unpaid overtime under both statutes, the Court would recommend a liquidated damages award of $3,904.96.

[24]  In the alternative, if the District Court opts to award Chen liquidated damages on his unpaid overtime under both statutes, the Court would recommend a liquidated damages award of $3,207.60.

required pursuant to section 195(3), Duan never received a proper written wage statement, and, thus, is entitled to recover $100 for each week that defendants violated that provision, up to a statutory maximum of $2,500. See N.Y. Lab. Law § 198(1-d).

As Duan worked for approximately eleven weeks, he is entitled to recover $550 for violations of section 195(1) and $1,100 for violations of section 195(3). Therefore, the Court recommends that the District Court award Duan a total of $1,650 for defendants' violations of the WTPA notice requirements.

### 2. Chen

The same WTPA provisions and penalties also apply to Chen. Chen worked for defendants for approximately sixteen weeks and, therefore, is entitled to recover $800 for violations of section 195(1) and $1,600 for violations of section 195(3). The Court recommends that the District Court award Chen $2,400 for defendants' violations of the WTPA notice requirements.

### F. Summary of Damages

|  | Duan | Chen |
|---|---|---|
| Overtime - FLSA | $1,452.48 | $1,003.80 |
| Unpaid Wages - NYLL | $1,000 | $1,200 |
| Liquidated Damages - FLSA | $2,452.48 | $2,203.80 |
| Alt. Liquidated Damages - FLSA & NYLL | $3,904.96 | $3,207.60 |
| WTPA Statutory Damages | $1,650 | $2,400 |
| **TOTAL** | $6,554.96 | $6,807.60 |
| **Alt. TOTAL** | $8,007.44 | $7,811.40 |

### G.    Prejudgment Interest

Pursuant to the New York Civil Practice Law and Rules ("CPLR"), plaintiffs request prejudgment interest on all of their damages, except for liquidated damages.  See Pl. Mem. at 11.  Plaintiffs, however, are not entitled to prejudgment interest on FLSA claims for which plaintiffs were awarded liquidated damages, even where those FLSA claims overlap with NYLL claims.  See, e.g., Spain, 2015 WL 5772190, at *1, *7 (adopting recommendation that no prejudgment interest should be awarded where there was a "complete overlap" between FLSA and NYLL claims) (Brodie, J.); Charvac, 2015 WL 5475531, at *7 (recommending prejudgment interest only for unpaid wages owed outside the FLSA statute of limitations); Bosoro, 2015 WL 5676679, at *8; Peralta, 2014 WL 988835, at *12; see also Widjaja v. Kang Yue USA Corp., 09 Civ. 2089 (AMD) (CLP), 2016 WL 304881, at *3 (E.D.N.Y. Jan. 25, 2016) ("Prejudgment interest may be awarded for violations of state law, for which no FLSA liquidated damages have been assessed.") (collecting cases); but see Cesario v. BNI Constr. Inc., 07 Civ. 8545, 2008 WL 5210209, at *6 (S.D.N.Y. Dec. 15, 2008), adopted, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009).

Plaintiffs are entitled, however, to recover prejudgment interest at a rate of nine percent per year on their compensatory damages that arise solely under the NYLL.  See N.Y. C.P.L.R. §§ 5001, 5004; Smith v. Nagai, No. 10-cv-8237 (PAE) (JCF), 2012 WL 2421740, at *4 (S.D.N.Y. May 15, 2012) ("[The] NYLL provides that a plaintiff is entitled to prejudgment interest at a rate of nine percent . . . .").  Moreover, prejudgment interest may be awarded on violations of the NYLL for which liquidated damages have also been provided. See, e.g., Kalloo v. Unlimited Mech. Co. of NY, Inc., 977 F.Supp.2d 187, 204 (E.D.N.Y.

2013); Gunawan, 897 F.Supp.2d at 92 ("Therefore, prejudgment interest may be applied to violations of the NYLL for which liquidated damages have already been provided under that statute.") (citations omitted).

Consequently, this Court recommends that plaintiff be awarded prejudgment interest on his NYLL unpaid section 191(1) claims. These awards total $1,000 for Duan and $1,200 for Chen.[25] See supra pp. 26-27. An award of prejudgment interest is governed by Sections 5001 and 5004 of the CPLR, and where, as here, "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). The choice of the date from which to compute prejudgment interest is left to the discretion of the court. See Gunawan, 897 F.Supp.2d at 93 (citing Koylum, Inc. v. Peksen Realty Corp., 357 F.Supp.2d 593, 597 (E.D.N.Y. 2005)) ("A court has discretion to choose a reasonable accrual date."); Rodriguez, 2011 WL 4962397, at *6 (quoting Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998)) ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation.").

_____

[25]  Plaintiffs do not seek prejudgment interest on their NYLL liquidated damages, see Pl. Mem. at 11, or their WTPA statutory damages, see Duan Damages Chart; Chen Damages Chart. This is in accordance with the relevant case law. See Guaman v. Krill Contracting, Inc., No. 14-CV-4242 (FB) (RER), 2015 WL 3620364, at *10 (E.D.N.Y. June 9, 2015) (no prejudgment interest on amounts awarded under the WTPA); Apolinar v. Global Deli & Grocery, Inc., No. 12 CV 3446 (RJD) (VMS), 2013 WL 5408122, at *12 (E.D.N.Y. Sept. 25, 2013) ("Prejudgment interest is calculated, however, on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law.") (internal quotation and citations omitted).

-33-

Plaintiff proposes May 1, 2014 as the prejudgment interest starting date in his damages calculations, but offers no reason for choosing this particular date, other than describing it as a "midpoint." See Duan Damages Chart; Chen Damages Chart; Pl. Mem. at 11. The Court, in exercising its discretion, recommends that prejudgment interest be calculated seven days after plaintiffs ceased working for defendants — or January 4, 2014 for Duan and February 5, 2014 for Chen.

## H.   Attorney's Fees

### 1.   Applicable Legal Standard

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorney's fees, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), and plaintiffs' counsel has requested such, see generally Pl. Mem. at 12-15. In considering an application for attorney's fees, the Court must first determine the presumptively reasonable fee. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008). This presumptively reasonable fee - or lodestar[26]- is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citing Arbor Hill, 522 F.3d at 190) (internal quotations omitted).

Courts can and should exercise broad discretion in determining a reasonable fee award.

---

[26]  The lodestar is the product of the number of hours worked and an hourly rate. See Arbor Hill, 522 F.3d at 183 ("The fee - historically known as the 'lodestar'- to which [ ] attorneys are presumptively entitled is the product of hours worked and an hourly rate.").

See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion"). The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. See Arbor Hill, 522 F.3d at 186 n.3, 190. In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").[27]

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983). The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "exclude excessive,

---

[27]  In order to overcome the forum rule's presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons, 575 F.3d at 175.

redundant or otherwise unnecessary hours." Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR) (VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 2009)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010). "[A] fee award should be based on scrutiny of the unique circumstances of each case . . . ." McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (internal quotations and citations omitted).

In this case, plaintiffs seek to recover approximately $7,455 in attorney's fees for the time incurred by attorney Hang and $445 in costs. See Pl. Mem. at 15; see also Jian Hang's Declaration in Support of Motion for Default Judgment (Sept. 10, 2015) ¶¶ 21-32 ("Hang Decl."), DE #15-2.[28]

## 2.    Reasonable Hourly Rate

Plaintiffs request an hourly rate of $350 for Hang's services. See Hang Decl. ¶ 27. Recent cases have held that reasonable hourly rates for partners in wage and hour cases in this District typically range from $300 to $450. See Griffin, 2015 WL 1476415, at *8 (collecting cases); Carrasco-Flores, 2014 WL 4954629, at *9; Frontier Park Co. v. Contreras, 35 F.Supp.3d 264, 273 (E.D.N.Y. 2014).

Hang's requested rate is excessive under the facts of this case. First, while Hang is the principal of his own law firm, his experience spans only approximately ten years. See

---

[28]  The Hang Declaration states that counsel's costs totaled $445 — $400 for filing the complaint and $45 for serving defendant Chen. See Hang Decl. ¶ 31. Curiously, in support of his costs, counsel submitted to the Court an invoice dated *May* 30, 2014, in which the process server claimed to have served Chen on *June* 24, 2014. See Invoice of Frank Brodsky (May 30, 2014), DE #15-11 at 3.

Gonzalez v. Jane Roe, Inc., No. 10 CV 1000 (NGG) (RML), 2015 WL 4662490, at *6
(E.D.N.Y. July 15, 2015) (finding $450 hourly fee request "excessive" for counsel with thirty
years experience in a "routine" wage-and-hour action and reducing that counsel's rate to $300
per hour), modified on other grounds, 2015 WL 4681151 (E.D.N.Y. Aug. 6, 2015); Fermin
v. Las Delicias Peruanas Rest., 93 F.Supp.3d 19, 51-52 (E.D.N.Y. Mar. 19, 2015) (finding
$350 per hour to be reasonable for an attorney with sixteen years experience in a default
judgment case); Acosta v. Hall of Fame Music Stores, Inc., No. 10-CV-5139 (SLT)(LB),
2015 WL 1003550, at *8 (E.D.N.Y. Mar. 5, 2015) (awarding $350 per hour for attorney with
twenty-four years experience).  In addition, this was an uncontested action with defaulting
defendants, not a hotly litigated lawsuit requiring a high level of skill.

     More importantly, the Court believes that the skills and performance exhibited by
Hang warrant a significant reduction in his hourly rate.  To be sure, the errors varied in
degree.  Some were minor, careless mistakes.  See, e.g., Compl. ¶ 18 (inconsistent claims of
total weekly hours); id. ¶¶ 13-14 (neglecting to cite to section 191 for defendants' failure to
page wages).  Counsel's errors were not, however, limited to minor drafting mistakes.  See,
e.g., 7/13/15 Minute Entry (plaintiffs' counsel failed to serve defendants with the copy of the
scheduling order); 7/7/14 Order (directing that plaintiffs' counsel take action on the case or
risk dismissal for failure to prosecute); 12/15/16 Tr. at 4-5 (failing to request permission in
advance for Chen to appear by telephone at the inquest hearing).  But perhaps what was most
troubling was the fact that counsel proceeded to file documents with the Court concerning
plaintiff Chen's work schedule that clearly contradicted Chen's own recollection.  See
discussion supra pp. 5-6, 21-22.  It is for these reasons that the Court recommends that the

award for the hours expended by Hang be at an hourly rate at the lower end of the acceptable range, or $300 per hour.

### 3.    Reasonable Number of Hours

Hang spent 21.3 hours on this matter.  See Time Records, DE #15-10.  While the Court questions why plaintiffs' counsel spent almost six hours to research and draft a fairly straightforward, bare-bones complaint, it also notes that counsel voluntarily omitted time incurred for responding to this Court's February 23, 2015 order to show cause, as well as for the time his associate spent attending the first inquest hearing in July 2015 for which defendants were not notified.  See Time Records (no time claimed in 2015).  Thus, the Court finds that plaintiff's requested hours are not unreasonable.

Applying the reduced hourly rate by the number of hours, the Court recommends awarding $6,390 in attorney's fees, as well as an additional $445.00 for reasonable costs.

### CONCLUSION

For the reasons explained above, the Court recommends that default judgment be granted against defendants, jointly and severally, in the amount of $20,197.56, representing $6,554.96 in compensatory, liquidated, and statutory damages for Duan; $6,807.60 in compensatory, liquidated, and statutory damages for Chen; and $6,390 in attorney's fees and $445 in costs.[29]  In addition, the Court recommends awarding prejudgment interest at a rate of 9 percent, from January 4, 2014 through the date of judgment, on $1,000 of Duan's

---

[29]  If the District Court declines to adopt this Court's recommendation with respect to liquidated damages, see supra pp. 27-30, then the alternative recommendation for compensatory, liquidated, and statutory damages would be adjusted as follows:  $8,007.44 for Duan and $7,811.40 for Chen, see supra p. 31.

recommended damages and, from February 5, 2014 through the date of judgment, on $1,200 of Chen's recommended damages.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before April 4, 2016.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is requested to docket this Order into the court file and to transmit copies, via Federal Express, to defendants at the following addresses:

> Jim Chen
> 7121 Clamus Avenue
> Woodside, NY 11377
>
> JP Standard Construction Corp.
> 71-21 Calamus Avenue
> Woodside, NY 11377
> Attn:  Jim Chen
>
> JP Standard Construction Corp.
> 13631 41st Avenue #38
> Flushing, NY 11355
> Attn:  Jim Chen

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**March 18, 2016**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**